OLIVIA M. KIM, State Bar No. 228382
okim@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2904
Facsimile: (866) 974-7329

BRIAN M. WILLEN (admitted *pro hac vice*)
bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1201 Avenue of the Americas
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

*Attorneys for Defendant*
*Omega Natural Science, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA KISSEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OMEGA NATURAL SCIENCE, INC., a Nevada corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 2:16-cv-02770-GW-SK<br><br>**DEFENDANT OMEGA NATURAL SCIENCE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date: August 22, 2016<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Before: Hon. George H. Wu |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 22, 2016 at 8:30 a.m., or as soon thereafter as this matter can be heard before the Honorable George H. Wu of the United States District Court for the Central District of California, 312 N. Spring St., Los Angeles, CA 90012, Courtroom 10, Defendant Omega Natural Science, Inc. will and hereby does move this Court for an order dismissing Plaintiff's complaint.

This motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The motion is based upon this Notice; the accompanying Memorandum of Points and Authorities in support thereof; the Request for Judicial Notice in support thereof; the Declaration of Jason Locke Stoll ("Stoll Decl.") and exhibits thereto; the Declaration of Kevin L. Spark ("Spark Decl.") and exhibits thereto; the Proposed Order; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

This motion is made following a conference of counsel pursuant to L.R. 7-3 which took place on June 3, 2016.

Date: June 17, 2016

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Brian M. Willen*
      Brian M. Willen

*Attorneys for Defendant*
*Omega Natural Science, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

II.     FACTUAL BACKGROUND ..........................................................3

III.    LEGAL STANDARDS ..................................................................6

IV.     ARGUMENT ............................................................................7

    A.   Plaintiff Lacks Article III Standing Because She Suffered No
        Concrete Injury From Omega's Alleged Procedural Violation............7

    B.   Plaintiff's Claim Under The ARL Fails As A Matter Of Law ............9

        1.   The ARL Does Not Create A Private Right Of Action.............9

        2.   Omega Provided The Acknowledgement Required By The
            ARL ...............................................................................13

        3.   Omega's Good-Faith Disclosures Preclude Any Civil
            Remedies........................................................................15

    C.   Plaintiff's Claim Under The UCL Fails As A Matter Of Law ..........17

        1.   Plaintiff Did Not Lose Money Or Property As A Result Of
            Omega's Alleged Misconduct ...................................................17

        2.   Omega's Conduct Was Neither Unlawful Nor Unfair .............20

V.      CONCLUSION ......................................................................21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................7, 18

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) ........................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................7, 18

*Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545 (2011)..............................19

*Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006) ........................................................................................................17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ........................................................................................................20

*Chern v. Bank of America*, 15 Cal. 3d 866 (1976) ..................................................13

*Daro v. Superior Court*, 151 Cal. App. 4th 1079 (2007) ........................................19

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) .................................20

*Fields v. Wise Media, LLC*, No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 87671 (N.D. Cal. June 21, 2013) .............................................10

*Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594 (2014)................................21

*Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008)...............................................18, 19

*In Re Tobacco II Cases*, 46 Cal. 4th 298 (2006) .....................................................18

*Kissel v. Code 42 Software, Inc.*, Case No. SACV 15-1936-JLS (KESx) (C.D. Cal. Apr. 14, 2016) ....................................................................13, 19

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).................................18, 20

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544 (2013)...................................................................17

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007)....................20

*Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592 (2010)..........................9, 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................6, 7

*Mayron v. Google, Inc.*, 2016 Cal. Super. LEXIS 173 (Feb. 26, 2016)............12, 13

*Noe v. Superior Court*, 237 Cal. App. 4th 316 (2015) ............................................10

*Park-Kim v. Daikin Indus.*, 2016 U.S. Dist. LEXIS 35565 (C.D. Cal. Mar. 17, 2016) ............................................................................18

*Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909 (N.D. Cal. 2013) ................................20

*Raines v. Byrd*, 521 U.S. 811 (1997) ...................................................... 6

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .............................. 6

*Spokeo, Inc. v. Robins*, 194 L. Ed. 2d 635 (2016) ........................................ 1, 6, 7, 8

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ...................................... 8

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112 (2012) ................................................................................ 9

*Warth v. Seldin*, 422 U. S. 490 (1975) .................................................. 7

## STATUTES

Bus. & Prof. Code § 17204 ........................................................ 10, 13, 18

Bus. & Prof. Code § 17535 ........................................................ 13

Bus. & Prof. Code § 17602 ........................................................ 9, 10, 11

Bus. & Prof. Code § 17602(a)(1) ................................................... 5, 13

Bus. & Prof. Code § 17602(a)(2) ................................................... 5, 12, 13

Bus. & Prof. Code § 17602(a)(3) ................................................... passim

Bus. & Prof. Code § 17602(b) ...................................................... 15

Bus. & Prof. Code § 17602(d)(1) ................................................... 6, 15

Bus. & Prof. Code § 17603 ........................................................ 11, 12

Bus. & Prof. Code § 17604 ........................................................ 10, 12

Bus. & Prof. Code § 17604(b) ..................................................... 2, 9, 16, 21

## RULES

Fed. R. Civ. P. 12(b)(1) ........................................................... 6

Fed. R. Civ. P. 12(b)(6) ........................................................... 6, 7

## MISCELLANEOUS

Prop. 64, § 1, subd. (e) (2004) ...................................................... 17

Senate Judiciary Committee, Bill Analysis of Sen. Bill No. 340 (2009-2010 Reg. Sess.) ................................................................ 11

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

3

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

4

5

6

7

8

9

10

11

12

13

Defendant Omega Natural Science, Inc. ("Omega") sells nutritional supplements through its website. Among its distinct product offerings is an affirmative "AutoRefill" plan, which allows consumers to order Omega's supplements on a monthly basis at a reduced price. To enroll, the customer must actively choose to place an order for a product named "AutoRefill." During the purchase process, Omega conspicuously discloses to customers who select the AutoRefill product that they will be billed each month and requires customers' express consent to these terms. Omega's disclosures also include a detailed description of how AutoRefill can be cancelled and of the applicable cancellation policy.

14

15

16

17

18

19

20

21

22

23

In December 2015, Plaintiff Victoria Kissel ("Plaintiff") purchased the affirmative AutoRefill plan from Omega's website. She now claims that this routine commercial transaction entitles her to represent an expansive class of Omega customers seeking to obtain, for free, the products they affirmatively chose to buy. Not surprisingly, however, Plaintiff does not claim that Omega failed to disclose the recurring nature of the charges for AutoRefill or to obtain her consent for those charges. Instead, the sole basis for Plaintiff's claims is that Omega supposedly failed to provide certain information in an "acknowledgment" as required by California's Automatic Renewal Law (Business & Professions Code § 17600 *et seq.* ("ARL")). Plaintiff's claims fail as a matter of law.

24

25

26

27

28

As an initial matter, Plaintiff lacks Article III standing. Plaintiff alleges that Omega violated a technical requirement of the ARL, but—as the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 194 L. Ed. 2d 635 (2016) makes clear—a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Id.* at 646. Plaintiff has not claimed that Omega's alleged statutory

1    violation inflicted any concrete injury on her, nor could she. The absence of any

2    "injury in fact" requires dismissal of Plaintiff's complaint with prejudice.

3        Plaintiff's claims also fail on the merits. Plaintiff asserts a cause of action

4    under the ARL itself, but the statute does not create a private right of action. The

5    ARL is instead enforced by filing suit under a statute (such as California's Unfair

6    Competition Law ("UCL")) that provides for a civil cause of action for allegedly

7    unlawful conduct. As discussed below, Plaintiff has no viable UCL claim, and she

8    cannot evade those deficiencies by suing directly under the ARL.

9        Even if the ARL were self-enforcing, Plaintiff still would have no claim

10   because, as is clear from the materials referenced in the complaint, Omega

11   complies with the ARL. Omega provides customers with all the information

12   contemplated by the statute, including an "acknowledgement," which describes the

13   offer terms, the cancellation policy, and information about how to cancel, "in a

14   manner that is capable of being retained by the consumer." Bus. & Prof. Code §

15   17602(a)(3). That Omega provides much of this information prior to purchase only

16   underscores its commitment to ensuring that customers are well informed about

17   what they are buying. Beyond that, Omega's extensive efforts to explain the nature

18   of its recurring charges—and Plaintiff's evident understanding that she was paying

19   each month for what was clearly labeled an "AutoRefill" product—bring this case

20   within the ARL's "good faith" provision. *Id.* § 17604(b) ("If a business complies

21   with the provisions of this article in good faith, it shall not be subject to civil

22   remedies.").

23       Plaintiff also invokes the UCL, but that claim is equally infirm. The UCL

24   has its own standing requirement, which requires that a plaintiff must have suffered

25   a "loss of money or property" directly attributable to the defendant's alleged

26   wrongdoing. Plaintiff here alleges no such thing. Nothing in the complaint suggests

27   that Plaintiff lost money or property because of Omega's allegedly inadequate

28   acknowledgment. Plaintiff does not claim that the product she received from

Omega was unsatisfactory or that she was deceived about the nature of the recurring charges. Nor does she allege that had she received different information from Omega, she would have cancelled her order or done anything differently. Under these circumstances, Plaintiff's voluntary decision to buy an AutoRefill product simply is not an economic loss capable of supporting a UCL claim.

Beyond her lack of standing, Plaintiff's UCL claims must be dismissed because Plaintiff has not viably alleged that Omega's conduct was either unlawful or unfair. Plaintiff's UCL claim is tied exclusively to Omega's alleged violation of the ARL, but, as explained, Omega provided the legally required acknowledgment and, at minimum, its good-faith efforts to comply with the ARL preclude any civil liability, under the UCL or otherwise.

These deficiencies are fatal. Omega's motion to dismiss should be granted and Plaintiff's claims should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Omega sells nutritional supplements that customer may purchase through its website. Compl. ¶ 8. Omega's website offers a number of different products for sale, including "OmegaBrite Gelcaps," "OmegaBrite Kidz," "OmegaBrite Omega-3 Index Test Kit," and "OmegaBrite AutoRefill." Stoll Decl., Ex. A.[1]

"OmegaBrite AutoRefill" is a distinct product offering: it allows customers to buy OmegaBrite Gelcaps and/or OmegaBrite Kidz products under a monthly plan. *Id.* "AutoRefill" is presented to customers as a separate option from one-time purchases of Omega supplements. *Id.* Customers thus must affirmatively choose "AutoRefill," and Omega's website explains exactly what that choice entails: "When you select OmegaBrite **AutoRefill**, OmegaBrite will be automatically

---

[1] The contents of Omega's website are referenced in Plaintiff's complaint (¶¶ 8, 16–18), and are integral to Plaintiff's claims. They thus are properly considered by the Court on this motion to dismiss. *See* Omega's Request for Judicial Notice (filed concurrently with this motion).

delivered to your home each month in the quantity that you specify, and you will receive a **special 10% discount**." *Id.* (emphasis in original); *see also* Compl. ¶ 16.

The product page for the AutoRefill product confirms, as the name indicates, that it renews each month. Stoll Decl., Ex. B. The page also clearly states the applicable offer terms, the cancellation policy, and provides detailed information about how to cancel (which are highlighted in bold and a different-colored font):

> **OmegaBrite AutoRefill**
>
> Relax and Save 10% when you select the OmegaBrite Automatic Refill Plan option, Omega Brite® will be delivered to your home, each month, in the quantity that you specify.
>
> Order today and receive your 10% discount and automatic delivery of your order to your doorstep every month.
>
> You can change your order or cancel your automatic refill program at any time by calling our toll-free number **1-800-383-2030** or by contacting Updates@omegabrite.com. Your order can be changed or cancelled at any time until it has gone to our shipment center. We provide a money back guarantee and you may return for up to 30 days for a full refund less shipping.

*Id.* (emphasis and color in original). This webpage can be retained by the user by using the web browser's print feature or other methods available through the user's web browser. Indeed, Omega includes a "Print this page" button on the website itself so that the user may easily retain the page. *Id.*

Once the AutoRefill product is added to the consumer's shopping cart, Omega's website asks for the consumer's shipping and billing addresses as part of the purchase process. At the final step of the process, but before the order is submitted, there is a checkbox asking whether the consumer wants his or her credit card saved for future orders, and next to it notes in bolded and different-colored text "** IMPORTANT FOR AUTO REFILL ORDERS." Stoll Decl., Ex. C. When

clicked, this note states "**AUTO REFILL ORDERS:** You **must select this option** so that we can fulfill your monthly order." Stoll Decl., Ex. D (bold in original). A customer must check this box before purchasing an AutoRefill plan.

After receiving the order, Omega sends an email confirmation to the consumer. Compl. ¶ 17, Stoll Decl., Ex. E. The email confirmation states that the consumer has purchased an "AutoRefill" plan that renews "[e]very 30 days." *Id.* In addition, the email confirmation contains a link identified as "Subscription [redacted]" (where the redacted item is the user's subscription number), which leads to Omega's website where the AutoRefill plan can be cancelled (Stoll Decl., Ex. F), a phone number through which the plan can be cancelled, and an email address through which the plan can be cancelled. Compl. ¶ 17; Stoll Decl., Ex. E.

Plaintiff is an Omega customer. In December 2015, she purchased an "OmegaBrite GelCaps AutoRefill." Compl. ¶¶ 7, 17. Plaintiff does not allege that she was in any way dissatisfied with the AutoRefill product she purchased or that she did not understand what she was buying. Nevertheless, on April 22, 2016, Plaintiff filed this lawsuit against Omega, asserting claims on her own behalf and on behalf of a purported class of "[a]ll persons within California that, within the applicable statute of limitations period, purchased any product or service in response to an offering constituting an 'Automatic Renewal' as defined by § 17601(a) from Omega Natural Science, Inc., its predecessors, or its affiliates." *Id.* ¶ 18. Plaintiff conspicuously does *not* assert claims against Omega under the ARL's provisions requiring businesses to "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled" (Bus. & Prof. Code § 17602(a)(1)) and to obtain "consumer's affirmative consent to the agreement containing the automatic renewal offer terms" before charging the customer's credit card (*id.* § 17602(a)(2)). This amounts to a concession that Omega does exactly what the ARL requires in these respects.

Instead, Plaintiff's complaint alleges that despite Omega's clear disclosures, Omega supposedly failed "to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." *Id*. § 16702(a)(3). The ARL says that this requirement "*may* be fulfilled after completion of the initial order." *Id*. § 17602(d)(1) (emphasis added).

Based on Omega's alleged violation of this procedural requirement, Plaintiff asserts a claim directly under the ARL as well as a claim under the UCL, Bus. & Prof. Code § 17200 *et seq.* Plaintiff makes no allegation that she did not want to receive products on a monthly basis, that she did not receive and enjoy the contents of her order each month, that she ever asked for a refund, that she did not know how to cancel her AutoRefill plan, or that she would have done anything differently had she received a different "acknowledgement" from Omega.

## III.   LEGAL STANDARDS

Omega makes this motion under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court lacks subject-matter jurisdiction over this case because Plaintiff does not have standing to sue. And even if she had standing, Plaintiff's complaint fails to state a claim upon which relief can be granted.

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo*, 194 L. Ed. 2d at 643. Article III standing requires an "injury in fact" that is "fairly traceable to the challenged conduct of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Spokeo*, 194 L. Ed. 2d at 644 (quoting *Lujan*, 504 U.S. at 560). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" required for standing. *Id*. at 643 (quoting *Warth v. Seldin*, 422 U. S. 490, 518 (1975)).

For a claim to survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009); *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Instead, a plaintiff must provide factual allegations that do more than demonstrate a mere "possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV.   ARGUMENT

### A.   **Plaintiff Lacks Article III Standing Because She Suffered No Concrete Injury From Omega's Alleged Procedural Violation**

As discussed above, to assert a claim in federal court, a plaintiff must allege facts demonstrating, among other things, that she suffered a concrete "injury in fact" fairly traceable to the defendant's alleged misconduct. Plaintiff here cannot meet this fundamental requirement. Her complaint does not so much as refer to standing, much less allege facts purporting to establish an actual injury.

The only injury Plaintiff purports to have suffered is Omega's alleged violation of the ARL's requirement that businesses provide an "acknowledgement" setting out the terms of the automatic renewal offer and describing the cancellation

process. Bus. & Prof. Code § 17602(a)(3); Compl. ¶¶ 2–3, 17, 31. But this claim runs headlong into the Supreme Court's recent holding in *Spokeo* that a technical violation of a statute, standing alone, is not an injury in fact. The Court explained: "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 194 L. Ed. 2d at 645; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). Accordingly, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 194 L. Ed. at 645.

That is what Plaintiff tries to do here. The ARL's "acknowledgment" provision is precisely the kind of procedural requirement that the Supreme Court has made clear does not, in and of itself, give rise to Article III standing. *Id.* (citing *Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")). Like a consumer reporting agency reporting inaccurate information about someone's zip code, it is "difficult to imagine" how the mere failure to receive an acknowledgement under the ARL "could work any harm." *Id.* at 646. Unsurprisingly, therefore, Plaintiff does not even try to make that showing. The complaint does not purport to allege that Omega's supposed violation of the acknowledgment provision caused Plaintiff any actual harm or exposed her to a "risk of real harm." *Id.* at 645. Nor could she. *See infra* Section IV.B.3. She instead alleges merely a "bare procedural violation," which does not "satisfy the demands of Article III." *Spokeo*, 194 L. Ed. at 646. Because Plaintiff did not suffer any cognizable "injury in fact" as a result of Omega's alleged statutory violation, she lacks standing, and her complaint must be dismissed with prejudice.

## B.   Plaintiff's Claim Under The ARL Fails As A Matter Of Law

Plaintiff tries to assert a claim directly under the ARL. Compl. ¶¶ 29–31. This claim fails, first, because the ARL does not create a private cause of action. But even if the ARL did authorize direct civil claims, it is clear from the face of the complaint that Omega has not violated the statute. It provided exactly the kind of "acknowledgement" required by Section 17602(a)(3). If there were any doubt on that score, moreover, Omega's extensive disclosures regarding the recurring nature of the AutoRefill plan and the cancellation procedures applicable to that plan trigger the ARL "good faith" provision, which protects Omega from any "civil remedies." Bus. & Prof. Code § 17604(b).

### 1.    The ARL Does Not Create A Private Right Of Action

No private right of action exists under a statute unless the Legislature has manifested an affirmative intent to create one, as revealed through the statutory language and legislative history. *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596 (2010) (citations omitted). "[T]he statutory language or legislative history [must] affirmatively indicate[] such an intent" either expressly or by strong implication. *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1131–32 (2012) (citations and quotation marks omitted). Courts examine the statute's language first, "as it is the best indicator of whether a private right to sue exists." *Lu*, 50 Cal. 4th at 603. "[C]lear, understandable, unmistakable terms" in a statute "strongly and directly indicate" legislative intent to confer a private right of action. *Id.* at 597 (citations omitted). If the statute does not contain such express language, but contains "provisions [that] create some ambiguity," then the court may look to the statute's legislative history "for greater insight." *Id.* at 598. Here, both inquiries point to the same conclusion.

The language of the ARL shows no intent to create a private right of action. Section 17602 is the operative provision of the statute. It states simply that "[i]t shall be unlawful for any business" to engage in certain practices related to

automatic renewal programs. Bus. & Prof. Code § 17602. While that section goes on to describe in detail the practices that are "unlawful," nothing in its text suggests that a private party has a right under the statute itself to bring a claim to recover for those unlawful practices. *Id*. Instead, the Legislature confined its discussion of remedies to Section 17604, which says only that "all available civil remedies that apply to a violation of this article may be employed." *Id*. § 17604. This is plainly a reference to *existing* civil remedies, rather than a provision designed to create a brand new private right of action. It means simply that a plaintiff injured by a violation of the statute may invoke an existing remedial statute, such as the UCL, to enforce a violation of the ARL. *See Fields v. Wise Media, LLC*, No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 87671, at *13–15 (N.D. Cal. June 21, 2013) (Section 17600 claim brought pursuant to the UCL).

Plaintiff recognizes that Section 17604 permits the use of existing civil remedies, but she suggests that the provision also creates a freestanding cause of action under the ARL itself. Compl. ¶ 31. It does nothing of the sort. Indeed, there is a striking contrast between the language of Section 17604 and that of statutes that *do* create a private civil cause of action. For example, the Legislature unambiguously vested a right to sue in those harmed by violations of the UCL: "Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Bus. & Prof. Code § 17204. These are the sort of "clear, understandable, unmistakable terms" that indicate legislative intent to create a private right of action. *Lu*, 50 Cal. 4th at 597 (citations omitted). By contrast, statutory language like that of the ARL, which contains "no language suggesting a private plaintiff may bring a direct action," does not manifest the requisite legislative intent to allow such claims. *Noe v. Superior Court*, 237 Cal. App. 4th 316, 337–39 (2015) (no private right of action created by Labor Code section that "describes the prohibited conduct" and

"provides for a 'civil penalty' [but] contains no language suggesting the penalty is recoverable directly by employees").

The legislative history of the ARL confirms that the Legislature did not intend to create a new civil cause of action directly under the statute itself. The Senate Judiciary Committee Bill Analysis discusses the "[r]emedies available under the bill," highlighting the statutory language stating that "all applicable civil remedies would be available." Spark Decl., Ex. G (Senate Judiciary Committee, Bill Analysis of Sen. Bill No. 340 (2009-2010 Reg. Sess.) as amended Apr. 2, 2009, for hearing on Apr. 14, 2009, at 6). The committee then went on to discuss the various civil remedies available—those under the False Advertising Act and those under the UCL. *Id.* Conspicuously absent is any indication that a Plaintiff could proceed with a claim under the ARL by itself. The Legislature thus understood that in enacting the ARL, it was not bringing into existence a new private right of action, but instead that violations of the statute could be enforced through existing laws that authorized, and set the terms for, private civil remedies.

Plaintiff also tries to get around the clear mandate of the statute and its history by invoking Section 17603. Compl. ¶¶ 3, 15. That provision says:

> In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, ***without first obtaining the consumer's affirmative consent as described in Section 17602***, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer.

Bus. & Prof. Code § 17603 (emphasis added). This language does not help Plaintiff. That is so for two reasons. *First*, Section 17603 has no application to this case because Plaintiff does not (and could not) allege that Omega failed to obtain her affirmative consent to the automatic renewal agreement. As discussed, Plaintiff's ARL claim against Omega is solely for its alleged failure to provide the

"acknowledgment" required by Section 17602(a)(3). But a violation of that requirement does not trigger Section 17604. As the statute's text makes clear, Section 17603 can be invoked only where the business fails to obtain affirmative consent as required by Section 17602(a)(2). Because Omega obtained such consent, Section 17603 simply is not in play.

*Second*, even if it did somehow apply, Section 17603 is not a liability provision, and it does not give consumers a right to bring civil claims against businesses. Instead, by its terms, the provision merely restricts the remedies available to a *seller* seeking payment or other compensation for goods already delivered. Section 17603, that is, bars a seller from bringing a claim against a consumer to obtain payment for goods that were sent under an automatic-renewal agreement that did not satisfy the affirmative-consent requirement. The provision deems such goods "an unconditional gift" and thus prevents the seller from demanding their return or payment for them. But it does not authorize affirmative claims by purchasers of such goods to obtain damages or restitution from the seller. In other words, Section 17603 affords consumers a shield against liability, not a sword they can wield to impose it.

The only California court to have addressed this issue agreed with this analysis and held squarely that the ARL does not provide a private right of action. *See Mayron v. Google, Inc.*, 2016 Cal. Super. LEXIS 173 (Feb. 26, 2016). The *Mayron* court specifically rejected the plaintiff's reliance on both Section 17603 and 17604. The court explained that Section 17604's "use of the language 'all available' indicates that no new private right of action has been created; rather, a party can rely on civil remedies that already exist"—such as the UCL. *Id*. at *6. The court also held that Section 17603 did not reflect an intent to create a private right of action, as that provision is properly interpreted as a shield against a seller seeking payment for a good sent rather than authorizing a consumer to bring an action. *Id*. at *7–8. The court thus dismissed the plaintiff's ARL claim with

prejudice and made clear that the plaintiff could enforce the ARL, if at all, through a claim under the UCL. *Id*. at *6, 8–9. For all the reasons discussed above, the *Mayron* decision is correct, and it should be followed here.[2]

2.      Omega Provided The Acknowledgement Required By The ARL

Even if the ARL did support a stand-alone cause of action, Plaintiff's claim under it fails as a matter of law.

As discussed, Plaintiff does not contend that Omega failed to present the automatic renewal terms for the AutoRefill product in a "clear and conspicuous manner," as required by Section 17602(a)(1). Nor does she contend that Omega charged her credit card without first obtaining her affirmative consent, as required by Section 17602(a)(2). Instead, Plaintiff limits her claim to an alleged violation of the ARL's "acknowledgment" provision. That provision requires that a business "provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Bus. & Prof. Code § 17602(a)(3). But it is evident from the complaint and the materials it references that Omega provided the acknowledgement required by the ARL.

Omega's website, on the page describing the AutoRefill product, explains exactly what the automatic renewal offer terms are (new product is shipped every 30 days, with charges made on a recurring monthly basis until the customer

---

[2] Plaintiff may try to rely on *Kissel v. Code 42 Software, Inc.*, Case No. SACV 15-1936-JLS (KESx) (C.D. Cal. Apr. 14, 2016), but that ruling does not help her cause. Although *Kissel* suggested that the ARL creates a private right of action, what it really held is that the statute could be enforced through Bus. & Prof. Code § 17535. Spark Decl., Ex. H (Order in *Kissel*) at 19–22. Here, however, Plaintiff has not invoked Section 17535. That is likely because the only relief allowed under that provision is an injunction. *See Chern v. Bank of America*, 15 Cal. 3d 866, 875 (1976). Here, however, Plaintiff here seeks damages and restitution. Compl. ¶¶ 1, 3, 21.iii, Prayer E. Beyond all that, an injunctive relief action under Section 17535 requires a private plaintiff to make the same showing of injury—that she "has suffered injury in fact and has lost money or property as a result of a violation"— required for a claim under the UCL. *Compare* Bus. & Prof. Code § 17535 *with id*. § 17204. As discussed below, Plaintiff cannot make that showing.

cancels), what the cancellation policy is (the plan can be "changed or cancelled at any time until it has gone to our shipment center"), and gives customers specific information about how they can cancel their plans (including both a phone number and an email address, with the relevant information emphasized in bold and in a different colored font). These disclosures could hardly be clearer:



Stoll Decl., Ex. B. This page thus provides all of the information required by the ARL's acknowledgement provision. And, because this information is on a public webpage, which can easily be copied, stored, or printed using any web browser— and indeed Omega provides a "Print this page" option—it is presented by Omega "in a manner that is capable of being retained by the consumer," Bus. & Prof. Code § 17602(a)(3).

1    But that is not all. After an AutoRefill purchase is completed, Omega sends

2    the customer an email receipt that (once again) specifically identifies that the plan

3    renews every 30 days, provides a link to the website where the full terms of the

4    AutoRefill offer can be viewed, and provides a phone number, email address, and

5    website link where the plan can be cancelled. Compl. ¶ 17, Stoll Decl., Exs. E-F.

6    Omega also sends similar email receipts after the customer is charged each month

7    for the ongoing shipments of products covered by their AutoRefill plans. Compl. ¶

8    17. These emails too can be retained by the consumer. In short, Omega does

9    exactly what the ARL's acknowledgment provision requires.

10    In suggesting otherwise, Plaintiff focuses narrowly on the email receipts that

11    she received. *Id*. Plaintiff seems to believe that only information sent by email after

12    a purchase is made is capable of serving as the "acknowledgment" mandated by

13    Section 17602(a)(3). This misunderstands the law. The acknowledgment provision

14    does not dictate the timing of the disclosure. The statute says that the

15    acknowledgement requirement "*may* be fulfilled after completion of the initial

16    order." Bus. & Prof. Code § 17602(d)(1) (emphasis added). This permissive

17    language does not *require* a business to provide the acknowledgement after an

18    order is completed. A business may equally comply with the statute by providing

19    the acknowledgement beforehand, or through a combination of information

20    provided both before and after the order is completed. That is what Omega did. As

21    explained above, Omega provided customers with all the information required by

22    Sections 17602(a)(3) and 17602(b), both through its website during the purchase

23    process and through the email receipts it sent to confirm orders and payments. The

24    ARL requires nothing more. Because Omega complied with the acknowledgment

25    provision, Plaintiff's claim fails and must be dismissed with prejudice.

26    3.    Omega's Good-Faith Disclosures Preclude Any Civil Remedies

27    Even if the ARL created a private right of action and even if there were

28    some question whether Omega's disclosures fully satisfied the acknowledgment

provision, Plaintiff's claims still would fail. The ARL contains a safe-harbor: "If a business complies with the provisions of this article in good faith, it shall not be subject to civil remedies." Bus. & Prof. Code § 17604(b). The obvious purpose of this provision is to protect businesses that make good-faith efforts to comply with the ARL from lawsuits claiming that they fell short in some technical way. The safe harbor applies here: it is clear from the complaint that Omega acted in good faith to provide customers with the information that the ARL requires.

As shown above, Omega's extensive disclosures tell customers exactly how and when they will be billed for an AutoRefill order and how they can cancel their plans. This information is conspicuously presented in multiple places on Omega's website. For starters, the page listing Omega's products contains separate listings for one-time purchases and for "AutoRefill," so from the very beginning of the purchase process customers must affirmatively choose a recurring plan. Stoll Decl., Ex. A. The page describing the affirmative "AutoRefill" product then provides detailed information about the applicable offer terms and cancellation policy. Stoll Decl., Ex. B. The final page before an affirmative AutoRefill order is completed again states that the consumer will be charged the designated amount on a monthly basis and seeks the customer's express consent for the recurring charges. Stoll Decl., Exs. C-D. Finally, once the purchase is made, Omega sends email receipts that reconfirm the recurring charge and provide information about the affirmative AutoRefill plan and how it can be cancelled. Compl. ¶ 17, Stoll Decl., Ex. E-F.

Through these detailed disclosures and acknowledgments, Omega manifests its good faith in complying with the requirements of the ARL. Omega's efforts in informing its customers about the recurring nature of charges for the AutoRefill product and how they can cancel their plans are clear at every turn. Not surprisingly, therefore, Plaintiff nowhere alleges that she was misled in any way by Omega, that she did not understand that she would be charged each month for the AutoRefill plan she was purchasing, or that she wanted to cancel the plan but

lacked the information to do so. Nor could Plaintiff credibly allege otherwise. Given the clear disclosures that Omega made, it would not be plausible for Plaintiff to claim that she was confused or deceived about what she was buying, how she would be billed for it, or how she could cancel if that is what she wanted.

This is precisely the scenario that the ARL's safe harbor was designed to address. The California Legislature did not intend for businesses that make good-faith efforts to disclose and obtain consent for their automatic renewal terms to be subject to civil liability—particularly not from a claim brought by an individual who has not asserted and could not assert that she was actually deceived or harmed. As a matter of law, Omega's efforts in this regard foreclose any civil claim against it.

## C.     Plaintiff's Claim Under The UCL Fails As A Matter Of Law

Although the ARL does not itself create a private right of action, injured parties may seek to enforce the law through the UCL. Here, however, Plaintiff's UCL claim fails as a matter of law. First, Plaintiff lacks standing to sue under the UCL because she has not lost "money or property as a result of" Omega's alleged violation. And even if Plaintiff could overcome the UCL's standing requirements, her claim fails on the merits: Omega's conduct was neither unlawful nor unfair.

### 1.     Plaintiff Did Not Lose Money Or Property As A Result Of Omega's Alleged Misconduct

The UCL was amended in 2004 to put an end to longstanding abuses of the statute by "'prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact.'" *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228 (2006) (quoting Prop. 64, § 1, subd. (e) (2004)); *see also, e.g.*, *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 547 (2013) (UCL has been "crafted to preclude the shakedown lawsuit"). To that end, a private claim under the UCL may be brought only by "a person who has suffered injury in fact and has

lost money or property *as a result of* the unfair competition." Bus. & Prof. Code § 17204 (emphasis added); *see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–23 (2011). The reference to "injury in fact" incorporates the standing requirements imposed by Article III of the U.S. Constitution. *Kwikset*, 51 Cal. 4th at 322. Likewise, the phrase "as a result of" "imposes a causation requirement: the alleged unfair competition must have caused the plaintiff to lose money or property." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008); *see also In Re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2006) (UCL plaintiff must allege that the defendant's misrepresentations were "an immediate cause of the injury-producing conduct") (internal quotation marks and citation omitted).

Plaintiff cannot meet these requirements. Even if she could somehow get past the Article III hurdle (*see supra* Section IV.A), it is clear that Plaintiff did not lose money or property as a result of Omega's allegedly unlawful conduct. The complaint alleges merely that Plaintiff purchased an AutoRefill plan from Omega and that she received an acknowledgment from Omega that Plaintiff claims is inadequate under the ARL. Compl. ¶¶ 17, 36. These allegations do not create standing under the UCL.[3] Receiving a supposedly inadequate "acknowledgment" (the sole basis for Plaintiff's claim against Omega) is not an economic injury. The complaint does not even try to assert that Plaintiff's receipt of Omega's emails caused her to lose money or property that she would have retained had the content of those emails been different. Nor does Plaintiff allege that she would have done

---

[3] Plaintiff's only effort to satisfy the UCL's money or property requirement is this allegation: "As a direct and proximate result of Defendant's unlawful, and/or unfair acts and practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and Class Members in the form of payments made for subscription agreements by Plaintiff and Class Members." Compl. ¶ 36. This "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, this is precisely the kind of "threadbare recital[]" that the Supreme Court has rejected. *Iqbal*, 556 U.S. at 678 (2009); *cf. Park-Kim v. Daikin Indus.*, 2016 U.S. Dist. LEXIS 35565 (C.D. Cal. Mar. 17, 2016) (applying *Iqbal* to reject conclusory allegations of standing).

anything differently had she received a more robust acknowledgment email. In short, Plaintiff has not alleged any injury, let alone an economic injury, and certainly not one caused by Omega's alleged inadequate acknowledgment. That rules out any claim under the UCL.

To be sure, Plaintiff paid for an AutoRefill plan from Omega. But voluntarily paying for a (non-defective) product that the person receives is not economic injury. A UCL plaintiff must allege actual causation: that the defendant's alleged misconduct caused her to pay money she would not have otherwise paid or forfeit property she otherwise would have retained. *See, e.g.*, *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1553–55 (2011) (dismissing UCL claim based on alleged overpayment of sales tax where plaintiff did not allege that she would have paid less but for the defendant's alleged misconduct); *Hall*, 158 Cal. App. 4th at 855 (dismissing UCL claim based on allegedly unfair billing practices where "[plaintiff] did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it."). Plaintiff here alleged nothing like that.[4] And any such allegation would be wholly implausible. Given that Omega clearly disclosed all aspects of the automatic renewal plan's terms, including the cancellation process, Plaintiff can make no suggestion that the

---

[4] Plaintiff may again try to rely on *Kissel v. Code 42 Software, Inc., supra*, (*see* Spark Decl., Ex. H), but that case's analysis of the UCL's standing requirements is inconsistent with established law (and the plain language of the statute) requiring UCL plaintiffs to establish that any monetary loss they claim to have suffered in connection with the purchase of a product was causally connected to the defendant's alleged wrongdoing. Merely doing business with a defendant does not create economic injury where the transaction was in no way affected by the alleged wrongdoing. *See, e.g.*, *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007) ("When a UCL action is based on an unlawful business practice, as here, a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice that does not otherwise affect the party. In short, there must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.").

1    alleged absence of the specific "acknowledgement" required by the ARL had any

2    causal connection to her purchasing decision.

3         Beyond all that, in cases like this, where the claim is grounded on a theory of

4    deception, the plaintiff must allege actual reliance. *See Kwikset*, 51 Cal. 4th at 326–

5    27. Here, that would require an allegation that Plaintiff was actually deceived by

6    Omega, i.e., that she would have acted differently had received the information

7    that Omega supposedly concealed. The complaint does not even try to make that

8    showing. Plaintiff does not allege that she was not aware of the terms of her

9    AutoRefill plan or that she would have cancelled her plan had Omega's

10   acknowledgment been different. The absence of any claim of detrimental reliance

11   further rules out any UCL claim here. *See Durell v. Sharp Healthcare*, 183 Cal.

12   App. 4th 1350, 1363–64 (2010) (rejecting UCL claim for failure to allege reliance).

13        In sum, even if the allegations in Plaintiff's complaint are true, they do not

14   establish that she suffered a loss of money or property as a result of Omega's

15   allegedly inadequate acknowledgement. Plaintiff thus lacks standing to bring any

16   claim under the UCL.

17              2.    Omega's Conduct Was Neither Unlawful Nor Unfair

18        Even beyond her failure to allege standing, Plaintiff has no viable UCL

19   claim in this case. The UCL prohibits three types of unfair competition; "[e]ach

20   prong—fraudulent, unfair, and unlawful—is independently actionable." *Pirozzi v.*

21   *Apple, Inc.*, 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) (citing *Lozano v. AT&T*

22   *Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007); *Cel-Tech Commc'ns, Inc.*

23   *v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999)). Here, Plaintiff invokes the

24   unlawful and unfairness prongs. Compl. ¶ 35. The basis for both claims is Omega's

25   alleged violation of the ARL. These claims fail as a matter of law.

26        The unlawful prong "borrows violations of other laws and treats them as

27   unlawful practices that the unfair competition law makes independently

28   actionable." *Cel-Tech*, 20 Cal. 4th at 180 (citations omitted). While a plaintiff

could in theory bring a UCL claim premised on a violation of the ARL, that is not possible here. In this case, as described in detail above, Omega fully complied with the ARL. *See supra* IV.B.2. That rules out any unlawfulness claim.

The same problem dooms Plaintiff's invocation of the unfairness prong. The only basis that the complaint even tries to offer for an unfairness claim is to "tether" the claim to the ARL. Compl. ¶ 35 ("The public policy which is a predicate to a UCL action under the unfair prong of the UCL is tethered to a specific statutory provision."). Under this approach, courts require that the UCL claim "be tethered to specific constitutional, statutory, or regulatory provisions." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260–61 (2006) (citation omitted).[5] Here, however, any tethering theory fails because there is no underlying violation of the ARL. Omega simply did not violate any of the ARL's requirements—including the requirement to provide a proper "acknowledgment." Plaintiff thus has no claim under the UCL's unlawful prong.

Finally, as explained above, even putting all that aside, Omega's good-faith efforts to comply with the ARL by providing clear and detailed information about the recurring charges and cancellation process trigger the statute's safe-harbor provision (Section 17604(b)). *See supra* Section IV.B.3. That means that Omega "shall not be subject to civil remedies," including any claim under the UCL.

## V.   CONCLUSION

Omega respectfully requests that the Court dismiss Plaintiff's complaint with prejudice.

---

[5] Plaintiff does not even try to invoke any of the other tests that court has used in considering unfair prong claims. *See generally Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 612–13 (2014). She certainly does not allege any facts that could possibly support a claim based on any of those tests. Nor could she.

Date: June 17, 2016

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Brian M. Willen*
      Brian M. Willen

*Attorneys for Defendant*
*Omega Natural Science, Inc.*